IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUI SI VOONG,

     Plaintiff,                                No. CIV S-08-0375 GGH

     vs.

MICHAEL J. ASTRUE,                      ORDER
Commissioner of
Social Security,

     Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED in part, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff.

BACKGROUND

        Plaintiff was born on September 2, 1949. (Tr. at 161). She applied for disability benefits on April 13, 2000. (Tr. at 161). Plaintiff alleged she was unable to work due to chronic arthritis, dizziness, sleeplessness, lung problems, mental disorder and a poor memory. (Tr. at 167.)

In a decision dated October 3, 2001, ALJ Mark C. Ramsey determined plaintiff was not disabled. On September 18, 2006, Magistrate Judge John F. Moulds reversed the ALJ's decision and remanded for a new hearing. (Tr. at 353-361.) Judge Moulds found that remand was required because the ALJ's finding that plaintiff was capable of doing simple, medium work was not supported by substantial evidence. (Tr. at 356.) In its remand order directing the ALJ to conduct a new hearing in compliance with the magistrate's order, the Appeals Council noted that plaintiff had subsequently been found disabled as of November 1, 2002. (Tr. at 351). Therefore, at issue on remand was whether plaintiff was disabled from April 13, 2000, through October 31, 2002. (Tr. at 325, 351.)

On August 9, 2007, another hearing was held before ALJ Ramsey. (Tr. at 376-410). On October 19, 2007, the ALJ issued a decision finding that plaintiff was not disabled during the relevant time period. (Tr. at 325-335.) The Appeals Council denied plaintiff's request for review. (Tr. at 317-319.)

On August 9, 2007, the ALJ made the following findings:[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

1. The claimant has not engaged in substantial gainful activity since April 13, 2000, the application date (20 CFR 416.920(b) and 416.971 et seq.).

2. The claimant has the following severe impairments: a depressive disorder and musculoskeletal back pain. (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926.)

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work with an additional restriction that she is limited to unskilled work.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 2, 1949 and was age 50 on the date the application was filed (20 CFR 416.963). She is currently age 57.

7. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2000, through October 31, 2002 (20 CFR 416.920(g)).

(Tr. at 325-335.)

\\\\\

---

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

## ISSUE PRESENTED

Plaintiff has raised the following issues: A) whether the ALJ failed to consider the opinion of the examining psychologist; B) whether the ALJ failed to credit plaintiff's testimony without a legitimate reason for doing so; C) whether the ALJ failed to properly assess plaintiff's residual functional capacity (RFC), failed to pose a legally adequate hypothetical to the vocational expert and, as a result, found plaintiff capable of performing a significant number of medium jobs.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## ANALYSIS

A. Whether the ALJ Failed to Consider the Opinion of the Examining Psychologist

Plaintiff contends that the ALJ improperly rejected the opinion of the examining psychologist, Dr. Finkel. Dr. Finkel found that plaintiff was depressed secondary to chronic pain, and that her ability to work over an eight-hour day and to attend to a regular work schedule was moderately to markedly impaired due to chronic pain and depression. In this claim, petitioner challenges the ALJ's finding that there was not sufficient objective evidence supporting Dr.

4

Finkel's opinion that plaintiff suffered chronic pain that would have caused her to suffer the level of depression he diagnosed.  Plaintiff also argues that the ALJ should have credited Dr. Finkel's opinion because her pain, and in particular headaches, was a cultural manifestation of her depression.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

5

2001),³ except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In his report, Dr. Finkel, who evaluated plaintiff in May 2000, stated that plaintiff told him that she was wounded during the Vietnamese war in 1971. (Tr. at 216.) She showed him a scar around her left temple area which she said was the shrapnel wound which resulted in injuries to her back and head. (Tr. at 216.) She reported a throbbing sensation on the top of her head which also made her dizzy. (Tr. at 216.) She told him that the headaches occur four or five times per day, lasting about three hours. (Tr. at 216.) They were worse during cold weather. (Tr. at 216.)

Plaintiff told Dr. Finkel that she had arthritis from her right shoulder to her hand. (Tr. at 216.) She also reported suffering from back pain for many years. (Tr. at 216.) Plaintiff told Dr. Finkel that she could stand for up to 30 minutes. (Tr. at 216.) Plaintiff told Dr. Finkel that she suffered depression due to pain. (Tr. at 218.) She reported that she suffered more or less chronic pain due to back aches, headaches and arthritis. (TR. At 218.)

Dr. Finkel concluded that plaintiff was depressed secondary to chronic pain. (Tr. at 219). He found that plaintiff's ability to work over an eight-hour day and to attend to a regular work schedule was moderately to markedly impaired due to chronic pain and depression. (Tr. at 219).

In his report, the ALJ summarized plaintiff's relevant medical history:

> A review of the treating records shows that the claimant was seen only once in the year 2000 and on only four to five occasions in the year 2001. At no time did the

---

³ The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

> claimant complain of depressive symptoms and she was not diagnosed with depression. When seen in the year 2000, she complained of only back and neck pain. She was diagnosed with arthritis in her neck, shoulder and hands and prescribed Ibuprofen and Tylenol three. Her physician did not order x-rays or other testing. In the year 2001, she continued to complain of neck pain, back pain, chronic headaches and insomnia. She was prescribed Feldane and Elavil. She has not provided opinion evidence from a treating physician during this period in support of her claim of an inability to perform all work. The above medical records do not show objective findings which would preclude the performance of even sedentary work.
>
> In addition to treating records, the claimant underwent a consultative orthopedic and psychiatric exam. The orthopedic exam took place in May of 2000. The claimant complained of chronic back pain which makes it difficult to walk more than one to two blocks, stand for more than one hour, or push, pull or lift anything over 20 pounds. She reports diffuse joint pain which is present at all times and is exacerbated by exposure to cold weather and any type of activity or exertion. Her joint pain includes pain in her hips, knees, shoulders, hand and back. She denied loss of grip strength at this time. She also reported chronic headaches.
>
> While the claimant described multiple joint pain and severe chronic pain, the findings on exam did not support the degree of pain allege[d]. Range of motion showed no significant abnormalities in any joint. The claimant was able to walk without difficulty and was in no apparent distress. There was no evidence of atrophy. Lumbar spine showed some tenderness to palpation with a mild to moderate degree of pain. Motor and sensory exam were normal.
>
> Based upon his exam the consultative physician opined that the claimant had only mild musculoskeletal pain with benign and self-limited-stress-related headaches. Back pain also was found to be mostly musculoskeletal. The physician opined that the claimant is restricted from lifting and carrying no more than 40 pounds occasionally, 30 pounds frequently. The claimant would be able to walk and stand four to six hours in an eight hour work day. There are no limitations in the claimant's postural or manipulative abilities (Exhibit B2 F).

(Tr. at 331.)

In regard to Dr. Finkel's report the ALJ stated:

> The claimant also underwent a psychiatric evaluation on May 2, 2000 with Dr. Finkel. The claimant's primary reported physical complaints. She reported she had recently completed a you [sic] one year treatment program for tuberculosis. She also reported a history of chronic low back pain which resulted in an inability to stand for more than 30 minutes. She reported chronic headaches. The claimant reported she is able to read and write in Vietnamese. On a typical day, she reports she awakens at 6 a.m. She performs some house cleaning and then eats breakfast. She watches television in the morning. The claimant spends most of her day at home due to pain. She reported her son performs the grocery shopping. She has problems sleeping because of pain. Mental status exam did not show any significant abnormalities. The claimant was oriented times four. She had no

7

> difficulty understanding interview questions posed by the interpreter. Speech and thinking were within normal limits. There was no evidence of psychosis. She was able to add five dollars and four dollars. However later she was unable to count to the number eight which is inconsistent with her prior ability to add the above sums. She denied neuro vegetative signs of depression. She was not taking any psychiatric medications at the time of the exam. Based upon the exam, the physician opined the claimant had a mood disorder secondary to chronic pain with depressive features and borderline intellectual functioning. The claimant's Global Assessment of Functioning (GAF) was listed at 50.
>
> The physician concluded the claimant is able to groom herself appropriately and should be able to follow simple instructions in Vietnamese. She would have difficulty attending to and following through on task without direct supervision. Interactions with others would be affected by depression and cognitive limitations. Attention, concentration and pace are moderately impaired. Her ability to work over and 8-hour day and attend to a regular work schedule is moderately to markedly impaired due to chronic pain and depression.
>
> The undersigned will not fully credit Dr. Finkel opinion report. The physician gave great weight to the claimant's report of chronic pain which she reported affected her ability to sustain attention and concentration. Dr. Finkel was not aware that the remaining medical evidence does not show evidence of any impairment or impairments which would cause the degree of chronic pain alleged by the claimant. Additionally, Dr. Finkel diagnosed depression based upon his one-time exam. While the undersigned agrees that the claimant has a depressive disorder, it appears that Dr. Finkel's opinion of the severity of the claimant's depressive disorder was also partially based upon the claimant's subjective complaints. The undersigned does not find the claimant's subjective complaints to be credible and the undersigned notes that there is absolutely no medical evidence of treatment for a mental disorders.

(Tr. at 331-332.)

The ALJ went on to give credibility to the testimony of Dr. Walters, the medical expert who testified at plaintiff's hearing. (Tr. at 332). Dr. Walters did not examine plaintiff, but based his testimony on a review of plaintiff's records. The ALJ stated,

> Dr. Walters testified in regards to the claimant's non-nonexertional/mental limitations. Based upon his review of the record and the claimant's testimony. Dr. Walters testified that the claimant had a depressive disorder and borderline intellectual functioning during the period at issue. He further opined that the claimant [sic] mental impairments were not of a severity which meets or is equivalent to any listing. Based upon his review, Dr. Walters testified that the claimant has only mild to moderate depression and her intellectual functioning is higher than that found by the consultative psychiatric exam. Dr. Walters opined that the claimant remained capable of performing simple one, two and three step commands if she has an interpreter. While noting that the prior consultative physician had listed a Global Assessment of Functioning (GAF) of 50, Dr.

8

> Walters noted that this Global Assessment Functioning (GAF) was partially based upon the physician's assessment of the claimant's pain and a severe depressive disorder and there are no records after this date documenting that the claimant has been treated for depression.
>
> Dr. Walters concluded the claimant has only mild to moderate depression and the Global Assessment of Functioning (GAF) of 50 was not a reflection of the claimant's actual ability to function.

(Tr. at 332-333)

In support of her claim that the record contained objective evidence of her serious, chronic pain, plaintiff cites a May 27, 2000, report by Dr. Akhondi and three treatment notes from 2000-2001. The Akhondi report is the orthopedic report referred to by the ALJ. (Tr. at 331.)

In his report, Dr. Akhondi wrote that his examination of plaintiff's lumbar spine showed a mild to moderate degree of pain and tenderness with the palpation of the paraspinous muscle groups. (Tr. at 222.) After examining plaintiff, Dr. Akhondi made the following Assessment:

> 1. Diffuse pain; appears to be mostly musculoskeletal which appears to be mild on clinical examination.
> 2. Headaches: they appear to be stress related and appear to be benign and self-limited.
> 3. Chest pain: the claimant's description of her chest pain does not indicate an ischemic chest pain and the lack of significant cardiac risk factors decrease the likelihood of CAD. The patient may benefit from an ETT for risk stratification.
> 4. Back pain: appears to be mostly musculoskeletal without any evidence of neurological involvement or abnormalities. Appears to be mild to moderate in clinical exam.

(Tr. at 224.)

Treatment notes from the Molina Medical Center dated June 26, 2000, state that plaintiff reported suffering shoulder pain 2-3 times a year due to an injury suffered during the Vietnam war. (Tr. at 235.) Her symptoms included neck and shoulder pain and headaches. (Tr. at 235.) She had decreased power grip in her right hand. (Tr. at 235). She was diagnosed with right shoulder pain/osteoarthritis and prescribed ibuprofen and Tylenol. (Tr. at 235.)

Treatment notes from the Molina Medical Center dated October 30, 2000, state that plaintiff reported back and neck pain which got worse during stormy weather. (Tr. at 269.) She was diagnosed with cephalgia [headaches] and arthritis. (Tr. at 269.) Treatment notes from the Molina Medical Center dated April 25, 2001, state that plaintiff reported shoulder pain, and a cough. (Tr. at 264.) Following an examination, she was diagnosed with mechanical shoulder pain and prescribed naprosyn and amoxicillin. (Tr. at 264.) Treatment notes from the Molina Medical Center dated June 22, 2001, state that plaintiff complained of chronic headaches and neck pain. (Tr. at 264.)

Dr. Finkel based his findings on the degree of pain suffered by plaintiff on what she told him. He apparently did not review her medical records. Plaintiff's medical records contain objective evidence that plaintiff suffered from mild to moderate back pain and arthritis. The ALJ found that the pain associated with these impairments would not have caused plaintiff to suffer the degree of pain and depression found by Dr. Finkel. For her pain, plaintiff was told to take Ibuprofen and Tylenol for her back pain and arthritis. She was also prescribed Feldene and Naprosyn, two drugs commonly prescribed to treat arthritis. Plaintiff's use of these drugs does not indicate that her pain caused by arthritis was of such a level to have caused the depression diagnosed by Dr. Finkel. That no tests, such as x-rays, regarding back pain and arthritis were ordered supports the ALJ's decision not to adopt Dr. Finkel's opinion. Dr. Akhondi's finding that plaintiff could lift and carry 30 pounds frequently and would be able to walk and stand four to six hours also suggests that plaintiff's pain was not of the level found by Dr. Finkel.

While it is not uncommon for headaches to be unaccompanied by objective evidence demonstrating their cause, in this case plaintiff claims that hers were caused by an injury she suffered during the Vietnam war. The only objective evidence supporting this claim is a scar on her head which she claims is where the injury occurred. The court finds that this scar alone is not sufficient, objective evidence of an injury that caused her to suffer the degree of pain

she claims she suffered during the at-issue period of time.

All of the aforementioned reasons were sufficiently specific and legitimate for the ALJ to rely on in rejecting Dr. Finkel's opinion regarding the level of pain plaintiff suffered. Because Finkel's opinion regarding plaintiff's physical pain, which he claimed caused her depression, was not supported by minimal clinical findings, the ALJ properly rejected Dr. Finkel's opinion.

In her second claim challenging the ALJ's rejection of Dr. Finkel's opinion, plaintiff contends that the ALJ should have credited Dr. Finkel's opinion because it was supported by the identified culture bounds syndrome. Plaintiff argues that her complaints of headaches and heart problems were cultural manifestations of her depression, which the ALJ failed to credit. However, Dr. Finkel made no mention of this issue in his report. At her hearing, Dr. Walters testified regarding this issue:

> Q: ...Doctor, you of course are familiar with the DSM-4, is that correct?
> A: yes.
> Q: Now the DSM-4 for the first time identified culture bound syndromes, is that correct?
> A: There is culture bound syndromes, yes.
> Q: When did the DSM-4 come out again?
> A: Oh gosh, I don't know the date it came out.
> Q: Was it before or after 2001?
> A: I think it came out in 2000, I'm not sure.
> Q: Right around that period is a pretty new–
> A: yeah, I don't know the exact date of the first publication, I have one here but I don't think they gave me–
> Q: Yeah, and my understanding, I'll represent to you that in identifying culture bound or taking that into account, some cultures may not–may express depression in ways other than the American western way.
> A: Yes, they just express in the headache in the Asian countries.
> Q: Right, and that's what we have here today, headaches and pains.
> A: Well, not so much pain more headaches, something wrong with her head.
> Q: Okay. Okay, fair enough. Can you give us a diagnosis from the DSM-4 about her condition?
> A: Well–
> Q: In the back there in the book they have–
> A: I think she has a mild to moderate case of 12.04 which would be under depression.

(Tr. at 406-407.)

11

1  Plaintiff is arguing, in essence, that the ALJ should have rejected Dr. Finkel's
2 opinion that plaintiff's headaches were caused by a head injury.  The only evidence supporting
3 the possibility that the headaches were caused by depression was Dr. Walters' brief testimony
4 above describing cultural bound syndrome.  This testimony was not sufficient for the ALJ to
5 make his own finding that the headaches were caused by depression.  Accordingly, this claim is
6 without merit.

7 B.  <u>Whether the ALJ Failed to Credit Plaintiff's Testimony</u>

8  Plaintiff argues that the ALJ failed to credit her testimony with a legitimate basis
9 for doing so.

10  The ALJ determines whether a disability applicant is credible, and the court defers
11 to the ALJ who used the proper process and provided proper reasons.  <u>See</u>, <u>e.g.</u>, <u>Saelee v. Chater</u>,
12 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit
13 credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v.</u>
14 <u>Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be
15 supported by "a specific, cogent reason for the disbelief").

16  In evaluating whether subjective complaints are credible, the ALJ should first
17 consider objective medical evidence and then consider other factors.  <u>Vasquez v.  Astrue</u>, 547
18 F.3d 1101 (9th Cir. 2008); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The
19 ALJ may not find subjective complaints incredible solely because objective medical evidence
20 does not quantify them.  <u>Bunnell</u> at 345-46.  If the record contains objective medical evidence of
21 an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged
22 symptoms, including aggravating factors, medication, treatment, and functional restrictions.  <u>See</u>
23 <u>id.</u> at 345-47.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior
24 inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to
25 \\\\\
26 \\\\\

follow a prescribed course of treatment; and (3) daily activities.[4]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom."  Vasquez, 547 F.3d at 1104, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007, Smolen, 80 F.3d at 1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing, and supported by reference to specific facts in the record.  Vasquez, 547 F.3d at 1104-05.

At the hearing, plaintiff testified through an interpreter.  (Tr. at 378.)  Plaintiff testified that she did not speak English.  (Tr. at 380.)  She also testified that she became a citizen in 1997.  (Tr. at 380.)  She passed the citizenship test, which was given in English, by "rehearsing."  (Tr. at 380.)  Plaintiff testified that in 2000-2001, her son took her to the supermarket three or four times.  (Tr. at 384.)  Her son forbids her to drive because she gets dizzy.  (Tr. at 384.)  She went to the Buddhist church four to five times in 2000.  (Tr. at 386.)  She has a driver's license.  (Tr. at 382.)

At the hearing, plaintiff testified that she gets headaches all the time.  (Tr. at 393.)  She took pain killers for them.  (Tr. at 393.)  She also had rheumatism up and down her arm and

---

[4] Daily activities which consume a substantial part of an applicants day are relevant.  "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

back. (Tr. at 393). She also had stomach pain which she took protein for. (Tr. at 394.) Plaintiff testified that when she sat down, her hip hurt. (Tr. at 396.)

In his report, the ALJ found plaintiff not credible for the following reasons:

> As stated more fully below, the undersigned does not find the claimant's testimony to be credible. The undersigned notes there is very little objective medical evidence in support of the claimant's reports and it appears to the undersigned that the claimant is exaggerating the degree of her limitations. It appears the claimant's ability to read or speak English is much better then [sic] she reports. While she testified she is illiterate and unable to communicate in English language, she was able to pass a citizenship test and obtain a driver's license. This indicates her ability to communicate in English is greater than testified. Additionally, the claimant has alleged multiple symptoms for which there is no medical support. This indicates symptoms exaggeration and or possibly fabrication.

(Tr. at 330).

In her summary judgment motion, plaintiff argues that passing the citizenship and driver's license tests did not demonstrate that she was less than truthful about her ability to communicate in English. Plaintiff points out that she testified, in effect, that she memorized the answers to the citizenship test. Plaintiff also points out that in California, a person can take a driver's license test in their native language. See http://www.dmv.ca.gov/pubs/curriculum/Unit%205.pdf. For the reasons stated by plaintiff, the court agrees that her passing of these tests did not demonstrate that she was being untruthful regarding her English speaking skills.

Plaintiff also argues that the objective, medical evidence supported her complaints of severe, chronic pain. As discussed above, while the record contained objective medical evidence of an impairment possibly expected to cause pain, i.e. Dr. Akhondi's report showing that plaintiff had mild to moderate pain in her lumbar spine, the ALJ considered other factors in finding that this condition did not cause the degree of pain alleged by plaintiff. As discussed above, the ALJ noted that in 2000, plaintiff was prescribed Ibuprofen and Tylenol three times and her physician did not order x-rays or other testing. (Tr. at 331.) In addition, in 2000 Dr. Akhondi found that she could lift and carry 30 pounds frequently and would be able to walk and

stand four to six hours.  (Tr. at 331.)  The ALJ reasonably relied on these facts in finding that plaintiff's claim of pain was exaggerated.

It is true that plaintiff's daily activities supported her claim of extreme chronic pain.  The ALJ noted that plaintiff reported that she needed help showering and no longer cooked.  (Tr. at 330.)  She also relied on her children to take her to the supermarket and perform household chores.  (Tr. at 330.)  However, because plaintiff's complaints of severe, chronic pain were not sufficiently supported by the medical records, the court finds that there was clear and convincing evidence to support the ALJ's rejection of her testimony regarding her chronic pain.

C. Whether the ALJ Failed to Properly Assess Plaintiff's RFC, etc.

Plaintiff alleges that the ALJ failed to properly assess her RFC and failed to pose a legally adequate hypothetical to the vocational expert.  Plaintiff argues that the ALJ failed to properly assess her RFC on grounds that he should have credited the opinion of Dr. Finkel, Dr. Walters and plaintiff.  As discussed above, the ALJ properly rejected the opinions of Dr. Finkel and plaintiff regarding the level of pain she suffered.  The ALJ adopted the opinion of Dr. Walters.  Accordingly, this claim is without merit.

Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir.1997).  If a hypothetical does not reflect all the functional limitations, the expert's testimony as to available jobs in the national economy has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  But see Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the

hypothetical which ultimately serves as the basis for the ALJ's determination. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).[5]

The ALJ posed the following hypothetical to the vocational expert: she can lift 25 pounds frequently, 50 pounds occasionally; sit, stand, walk six out of eight hours; she can perform simple, unskilled work and has no past relevant work experience. (Tr. at 408.) The vocational expert found that plaintiff could perform two medium jobs and two light jobs. (Tr. at 408.) The vocational expert testified that the language ability for all of these jobs was "one." (Tr. at 410). The Dictionary of Occupational Titles defines language level 1 as:

> Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses.

See http://www.occupationalinfo.org/appendxc_1.html.

Plaintiff argues that the ALJ's hypothetical to the vocational expert was inadequate because it failed to include any of the limitations found by Dr. Finkel. As discussed above, the ALJ properly rejected Dr. Finkel's opinion regarding plaintiff's depression caused by chronic pain.

Plaintiff also argues that the ALJ should have included her need for an interpreter in his hypothetical because Dr. Walters and Dr. Finkelfound that she needed one to explain how to perform simple, unskilled work. At the hearing, Dr. Walters testified that plaintiff could do simple one to three step commands, provided she had an interpreter to explain it. (Tr. at 402.) Dr. Finkel also found that plaintiff required an interpreter. (Tr. at 402.)

/////

/////

---

[5] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not. Id. at 756-757.

1       The ALJ did not include plaintiff's language skills in his hypothetical to the
2  vocational expert because he found that plaintiff's ability to read or speak English was better than
3  she reported because she passed the citizenship test and obtained a driver's license. (Tr. at 330.)
4  As discussed earlier, that plaintiff passed the citizenship test and obtained a driver's license did
5  not mean that she could speak and read English, even at language level 1 as defined in the
6  Dictionary of Occupational Titles.  That plaintiff had passed these two tests was not sufficient
7  grounds for the ALJ to reject the opinions of both Dr. Walters and Dr. Finkel that she would
8  require an interpreter at a job.  Plaintiff's need for an interpreter at the hearing also supports this
9  finding.  For these reasons, the court finds that plaintiff did not have level 1 language skills.

10      A claimant is not per se disabled if he or she is illiterate, i.e. unable to speak
11  English.  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  In Pinto, the Ninth Circuit held
12  that "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that
13  fails to comport with a claimant's noted limitations, the ALJ must definitively explain this
14  deviation."  Id.

15      In the instant case, the ALJ relied on job descriptions that did not comport with
16  plaintiff's language limitations.  His only explanation for this deviation was his view that
17  plaintiff's ability to communicate in English was better than what she reported.  As discussed
18  above, this finding was not supported by the record.  Accordingly, the court finds that the ALJ's
19  hypothetical to vocational expert was inadequate because it failed to include her need for an
20  interpreter.

21      The undersigned recognizes that this case has been pending at the administrative
22  level and then again in federal court for quite some time.  The undersigned has respect for the
23  fact that justice delayed can be justice denied.  However, because this case does not involve
24  present benefits, but back benefits only, and because there is no legitimate way that the
25  undersigned can take over the role of a vocational expert, this case must be remanded once more.
26  \\\\\

In sum, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Remand or Summary Judgment is GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter Judgment for the plaintiff. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 07/23/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

voong.ss